1  BROWN NERI SMITH & KHAN LLP
2    Ethan J. Brown (SBN 218814)
     Anita P. Wu (SBN 248876)
3  11601 Wilshire Boulevard, Suite 2080
   Los Angeles, California 90025
4  Telephone: (310) 593-9890
   Facsimile: (310) 593-9980
5  ethan@bnsklaw.com; anita.wu@bnsklaw.com

6  Attorneys for Defendant
   AMERICO FINANCIAL LIFE AND
7  ANNUITY INSURANCE COMPANY

8

9                    **UNITED STATES DISTRICT COURT**

10              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11                          **SAN JOSE DIVISION**

12

13  ANDREA CAPITO BLANCHARD, PHILLIP       Case No. 5:23-cv-04087-PCP
    COHEN, individually and as representatives of
14  the Class,                             [Related to Case No. 5:23-cv-04068-PCP;
                                           Case No. 5:23-cv-04123-PCP; and Case
15            Plaintiffs,                  No. 5:23-cv-04125-PCP]

16       vs.

17                                         **DEFENDANT'S NOTICE OF MOTION**
    AMERICO FINANCIAL LIFE AND             **AND MOTION TO DISMISS PLAINTIFFS'**
18  ANNUITY INSURANCE COMPANY,             **CLASS ACTION COMPLAINT;**
                                           **MEMORANDUM OF POINTS AND**
19            Defendant                    **AUTHORITIES IN SUPPORT THEREOF**

20

21                                         Judge:   The Honorable P. Casey Pitts
                                           Hearing: November 30, 2023
22                                         Time:    10:00 a.m.
                                           Place:   Courtroom 8, Fourth Floor
23

24

25

26

27

28

Brown, Neri, Smith &
Khan LLP
A Limited Liability Partnership

_____
DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 2

II.   SUMMARY OF ARGUMENTS .......................................................................... 5

III.  STATEMENT OF RELEVANT FACTS ............................................................ 6

      A.   Americo And Its 403(b) Annuities .......................................................... 6

      B.   The Americo Product Purchased By Plaintiffs ....................................... 7

      C.   The 403bCompare Website ...................................................................... 8

      D.   The Class Action Lawsuits Filed By Plaintiffs' Counsel....................... 10

IV.   LEGAL STANDARD ........................................................................................ 10

V.    ARGUMENT .................................................................................................... 11

      A.   Plaintiffs Fail To Allege A Viable UCL Claim Based On Americo's
           Alleged Violation Of The Education Code. ........................................... 11

           1.   Plaintiffs Fail To State a UCL Claim Based on an "Unlawful"
                Practice. ...................................................................................... 11

           2.   Plaintiffs Fail to State a UCL Claim Based on an "Unfair"
                Practice. ...................................................................................... 14

      B.   Plaintiffs Lack Standing to Bring a UCL Claim Based On Products They
           Never Purchased. .................................................................................... 16

      C.   Plaintiffs Lack Standing To Bring Their UCL Claim Because They
           Failed To Plead Injury "As A Result Of" Americo's Alleged Conduct. ..... 20

      D.   Plaintiffs Fail To Allege That They Lack An Adequate Remedy At Law........... 23

VI.   CONCLUSION ................................................................................................. 25

Brown, Neri, Smith &
Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

i

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### <u>Cases</u>

*Alaei v. Rockstar*,
224 F.Supp.3d 992 (S.D. Cal. 2016) ........................................................................... 15

*Alvarado v. 360 Mortgage Group, LLC*,
2017 WL 4647752 (N.D. Cal. Oct. 16, 2017) ............................................................... 11

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011) ........................................................................... 15, 16, 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................... 10

*Berryman v. Merit Property Management, Inc.*,
152 Cal. App. 4th 1544 (2007) .................................................................................... 11

*Cattie v. Wal-Mart Stores*,
504 F.Supp.2d 939 (S.D. Cal. 2007) ........................................................................... 21

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal.4th 163 (1999) ........................................................................................... passim

*Chapman v. Pier 1 Imps.*,
631 F.3d 939 (9th Cir. 2011) ....................................................................................... 24

*Cheaper! v. State Bd. of Equalization*,
2011 WL 2560248 (E.D. Cal. June 28, 2011) .............................................................. 14

*Das v. WMC Mortg. Corp.*,
831 F.Supp.2d 1147 (N.D. Cal. 2011) ......................................................................... 11

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ....................................................................................... 24

*Davis v. RiverSource Life Ins. Co.*,
240 F.Supp.3d 1011 (N.D. Cal. 2017) ......................................................................... 23

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) .................................................................................... 21

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ....................................................................................... 14

Brown, Neri, Smith &
Khan LLP
A Limited Liability Partnership

*Friedman v. AARP, Inc.*,
   283 F.Supp.3d 873 (C.D. Cal. 2018) ........................................................................... 24

*Gamez v. Summit Naturals, Inc.*,
   2022 WL 17886027 (C.D. Cal. Oct. 24, 2022) .................................................... 17, 19

*Gardner v. Safeco Ins. Co. of Am.*,
   2014 WL 2568895 (N.D. Cal. June 6, 2014) .............................................................. 23

*Kenery v. Wells Fargo, N.A.*,
   2014 WL 129262 (N.D. Cal. Jan. 14, 2014) ............................................................... 11

*Ketayi v. Health Enrollment Group*,
   516 F.Supp.3d 1092 (S.D. Cal. 2021) ........................................................................ 24

*Laster v. T-Mobile USA, Inc.*,
   407 F.Supp.2d 1181 (S.D. Cal. 2005) ........................................................................ 22

*Lazar v. Hertz Corp.*,
   69 Cal. App. 4th 1494 (1999) .................................................................................... 14

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ................................................................................... 10

*Loeffler v. Target Corp.*,
   58 Cal.4th 1081 (Cal. 2014) ...................................................................................... 16

*Lopez v. Zarbee's, Inc.*,
   2023 WL 210878 (N.D. Cal. Jan. 17, 2023) .............................................................. 21

*Lorentzen v. Kroger Co.*,
   532 F.Supp.3d 901 (C.D. Cal. 2021) .................................................................... 17, 18

*Mai v. Supercell Oy*,
   --- F.Supp.3d ---, 2023 WL 25713 (N.D. Cal. Jan. 3, 2023) ..................................... 16

*McCann v. Lucky Money*,
   129 Cal. App. 4th 1382 (2005) .................................................................................. 15

*McKinney v. Corsair Gaming, Inc.*,
   2022 WL 2820097 (N.D. Cal. July 19, 2022) ............................................................ 19

*Meza v. Coty, Inc.*,
   2023 WL 3082346 (N.D. Cal. Apr. 24, 2023) ....................................................... 17, 19

*Miller v. Ghirardelli Chocolate Co.*,
   912 F.Supp.2d 861 (N.D. Cal. 2012) ......................................................................... 17

*Monet v. JPMorgan Chase Bank, N.A.*,
   2017 WL 3895790 (N.D. Cal. Sept. 5, 2017) ............................................................ 11

Brown, Neri, Smith &
Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS

*Murphy v. Olly Public Benefit Corp.*,
   --- F.Supp.3d ---, 2023 WL 210838 (N.D. Cal. Jan. 17, 2023)......................................... 17, 18, 19

*Nacarino v. Chobani, LLC*,
   2022 WL 344966 (N.D. Cal. Feb. 4, 2022) ................................................................... 20

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ...................................................................................... 10

*Novak v. U.S.*,
   795 F.3d 1012 (9th Cir. 2015) .................................................................................... 10

*Peviani v. Natural Balance, Inc.*,
   774 F.Supp.2d 1066 (S.D. Cal. 2011)......................................................................... 20

*Roffman v. Perfect Bar, LLC*,
   2022 WL 4021714 (N.D. Cal. Sept. 2, 2022) ......................................................... 20, 21

*Rojas-Lozano v. Google, Inc.*,
   159 F.Supp.3d 1101 (N.D. Cal. 2016) ....................................................................... 11

*Sanchez v. Nurture, Inc.*,
   626 F.Supp.3d 1107 (N.D. Cal. 2022) ................................................................... 17, 18

*Smedt v. Hain Celestial Group, Inc.*,
   2014 WL 2466881 (N.D. Cal. May 30, 2014) ............................................................ 19

*Smith v. State Farm Mut. Auto. Ins. Co.*,
   93 Cal. App. 4th 700 (2001) ...................................................................................... 15

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..................................................................................... 23

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................................... 21

*Stephenson v. Neutrogena*,
   2012 WL 8527784 (N.D. Cal. July 27, 2012)............................................................. 19

*Suzuki v. Hitachi Global Storage*,
   *Tech.*, 2007 WL 2070263 (N.D. Cal. July 17, 2007) ................................................. 15

*Swearingen v. Late July Snacks LLC*,
   2017 WL 4641896 (N.D. Cal. Oct. 16, 2017).............................................................. 20

*Troyk v. Farmers Grp., Inc.*,
   171 Cal. App. 4th 1305 (2009) .................................................................................. 23

*Williams v. Apple, Inc.*,
   449 F.Supp.3d 892 (N.D. Cal. 2020) ......................................................................... 20

**Brown, Neri, Smith &**
**Khan LLP**
A Limited Liability Partnership

16209058.3
227156-10003

iv
_____
DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS

*Zimmerman v. L'Oreal USA, Inc.*,
   2023 WL 4564552 (N.D. Cal. July 17, 2023)................................................................ 19

**Statutes**

Cal. Bus. & Prof. Code § 17200...................................................................... passim

Cal. Bus. & Prof. Code § 17203............................................................................... 20

Cal. Bus. & Prof. Code § 17204............................................................................... 20

Cal. Educ. Code § 25101................................................................................. passim

Cal. Educ. Code § 25107................................................................................. passim

Cal. Educ. Code § 25110........................................................................................... 8

Cal. Educ. Code § 25113................................................................................. passim

Cal. Educ. Code § 25114................................................................................. passim

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS

**Brown, Neri, Smith &
Khan LLP**
A Limited Liability Partnership

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Thursday, November 30, 2023, at 10:00 a.m., or as soon thereafter as the Motion may be heard, in the Courtroom of the Honorable P. Casey Pitts, Courtroom 8 on the Fourth Floor of the Robert F. Peckham Courthouse, located at 280 South First Street, San Jose, California 95113, Defendant Americo Financial Life and Annuity Insurance Company ("Defendant" or "Americo") will and hereby does move to dismiss the Class Action Complaint (the "Complaint") [ECF No. 1-1] filed in this action by Plaintiffs Andrea Capito Blanchard and Phillip Cohen (collectively, "Plaintiffs"), and the sole cause of action alleged therein, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that the Complaint fails to plead facts sufficient to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Anita P. Wu and Request for Judicial Notice filed concurrently herewith; the pleadings and records on file in this action; the oral arguments of counsel; and such other materials and arguments as may be presented in connection with the hearing on this Motion.

Dated: September 29, 2023

BROWN NERI SMITH & KHAN LLP
  Ethan J. Brown (SBN 218814)
  Anita P. Wu (SBN 248876)


By: /s/ Anita P. Wu
  Anita P. Wu

11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980
ethan@bnsklaw.com; anita.wu@bnsklaw.com

*Attorneys for Defendant*
AMERICO FINANCIAL LIFE AND ANNUITY
INSURANCE COMPANY

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

## STATEMENT OF ISSUES TO BE DECIDED

Defendant Americo Financial Life and Annuity Insurance Company's ("Defendant" or "Americo") motion to dismiss the Class Action Complaint filed by Plaintiffs Andrea Capito Blanchard and Phillip Cohen (collectively, "Plaintiffs"), raises the following issues:

1. **Failure To State UCL Claim Based On "Unlawful" Or "Unfair" Practice.** Whether the Complaint states a viable claim against Americo under California Business & Professions Code Section 17200 *et seq.* (the "UCL") based on an "unlawful" or "unfair" practice, when Americo's challenged conduct in this case is expressly authorized by California Education Code Sections 25113 and 25114 and is therefore entitled to safe harbor from liability under California law.

2. **Lack of Standing To Bring UCL Claim For Unpurchased Products.** Whether Plaintiffs have standing to bring a UCL claim based on Americo products that they never purchased, when they failed to allege facts demonstrating that such products are "substantially similar" to the single Americo product they purchased – or that the alleged disclosure violations, suffered injuries, and asserted claims are sufficiently similar across all of Americo's 403(b) products such that the resolution of the claims would be "identical."

3. **Lack of Standing For Failure To Plead Injury "As A Result of" Americo's Conduct.** Whether Plaintiffs have standing to bring a UCL claim when their Complaint fails to plead the required causation – or reliance on Americo's alleged omission and a resulting injury in fact.

4. **Failure To Allege Inadequate Remedy At Law.** Whether the Complaint states a claim for relief under the UCL when it fails to allege that Plaintiffs lack an adequate remedy at law or plead entitlement to injunctive relief.

Brown, Neri, Smith &
Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

1

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

Defendant Americo Financial Life and Annuity Insurance Company ("Americo" or

3

"Defendant") respectfully submits this Memorandum of Points and Authorities in support of its

4

motion to dismiss the Class Action Complaint (the "Complaint") filed by Plaintiffs Andrea Capito

5

Blanchard and Phillip Cohen (collectively, "Plaintiffs"), alleging a single count for violation of

6

California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL").

7

**I.    INTRODUCTION**

8

This lawsuit is one of five substantially similar copy-and-paste class action complaints

9

filed by Plaintiffs' counsel on June 26, 2023 against a number of insurance companies – four of

10

which are now pending before this Court.[1]  In each of these putative class action lawsuits, the

11

plaintiffs assert a single UCL claim, predicated on the same underlying allegation:  Plaintiffs

12

claim that the defendants in these cases violated California Education Code Sections 25101(a)(3)

13

and 25107 by failing to disclose on the state-sponsored 403bCompare.com Website "complete,

14

accurate, and up-to-date" information about the fees associated with the 403(b) retirement

15

products they offered to California public school employees.  Compl. ¶ 99.

16

Because these complaints are largely identical in many respects, they are also similarly

17

defective in several respects discussed below (as well as in the motions to dismiss filed by other

18

defendants).  Notably, however, in Americo's case, the applicable facts and law also differ in

19

critical respects that conclusively foreclose the relief Plaintiffs seek, and require dismissal of the

20

Complaint without leave to amend.  Here, the Complaint is fatally defective for the simple reason

21

that Americo's challenged conduct in this case is ***expressly and unambiguously authorized*** by the

22

vendor registration statutes relied on by Plaintiffs.

23

By way of background, the statutory requirements upon which Plaintiffs predicate their

24

claim were enacted by the California Legislature in 2002.  That legislation required the California

25

---

26

[1] Four of these class action lawsuits are currently pending before this Court, including this case and the three related cases captioned *Hoffman et al. v. Life Insurance Company of the Southwest* (Case No. 5:23-cv-04068-PCP); *Barlett et al. v. North American Company for Life and Health Insurance* (Case No. 5:23-cv-04123-PCP); and *Taylor et al. v. Midland National Life Insurance Company* (Case No. 5:23-cv-04125-PCP).  The fifth is pending in Los Angeles Superior Court, captioned *Jacobson v. Metropolitan Life Insurance Company* (LASC Case No. 23STCV14788).

27

28

State Teachers' Retirement System (CalSTRS) to create and implement by 2004 a "vendor registration process" and "online information bank" (referred to as the "403bCompare Website" or the "Website"), whereby information about certain tax-deferred retirement plans ("403(b) products") offered by prospective vendors would be made available to California public school employees.  This Website was created "to help employees . . . make better-informed investment decisions by offering information about" 403(b) products and vendors.[2]

Importantly, both of the two Plaintiffs in this case initially purchased their 403(b) product from Americo <u>before November 30, 2004</u> – *i.e.*, before the Website was implemented.  Compl. ¶¶ 20, 106.  The crux of their Complaint against Americo is that it did not register this product on the Website after its creation, that Plaintiffs continued making contributions to this product, and that Education Code Sections 25101(a)(3) and 25107 prohibited Americo from charging Plaintiffs fees not disclosed on the Website.  But Plaintiffs point to the wrong Education Code provisions.  The registration and disclosure requirements of Sections 25101(a)(3) and 25107 simply do not apply to Plaintiffs' claim against Americo.  Rather, continuing contributions to products purchased before November 30, 2004 are specifically addressed and separately governed by Education Code Sections 25113 and 25114.  Those provisions could not be clearer, and are fatal to Plaintiffs' claim:  they unambiguously authorize continuing contributions to unregistered products purchased before November 30, 2004.  In other words, the allegations of this Complaint are <u>squarely governed by</u> Sections 25113 and 25114, which expressly <u>exempt</u> products purchased before 2004 from the registration and disclosure requirements which Americo is alleged to have violated.

At the outset, it also bears emphasis that Plaintiffs' complaint about the Americo product they purchased is that Americo <u>failed to register</u> it altogether – and therefore "provided no disclosures whatsoever about" this product on the Website.  *See* Compl. ¶¶ 103-107 (alleging that Americo "failed to disclose not only this product's fees, but its existence").  This is important, because what Sections 25101(a)(3) and 25107 prohibit vendors from charging are undisclosed fees "associated with a <u>registered</u> 403(b) product" – and these provisions therefore have no application

---

[2] *See* 403bCompare Website, "About Us," *available at* https://www.403bcompare.com/AboutUs.

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS

in this case.  Educ. Code § 25107.  Put differently, by definition, exemption from registration

necessarily means exemption from the disclosure requirements for registered products.

Because America's alleged wrongdoing in this case is its failure to register Plaintiffs'

Americo product (rather than the sufficiency of the substance of its Website disclosures),

Plaintiffs' statutory arguments in the Complaint about what Website disclosures must be made for

a <u>registered</u> product – and when existing Website disclosures must be updated for a <u>registered</u>

product – are simply irrelevant to the analysis.  For purposes of granting America's motion, this

Court need not consider such issues – including whether "caps," "participation rates" and

"spreads" are properly understood as "fees" within the meaning of the statutes (they are not).[3]

Instead, Sections 25113 and 25114 are outcome-dispositive.

The bottom line is that America's challenged conduct in this case cannot be the basis for a

UCL claim against it.  Not only is this the required result under a straightforward application of

the plain language of the statutes, but it makes sense.  As Plaintiffs admit, the "fees" that they now

seek to "disgorge" were binding "contractual terms" (Compl. ¶ 72) which they had long ago

agreed to.  The legislature's creation of a product-comparison Website years later had no effect on

the operation of these basic contractual terms, and was never intended to nullify or change the

terms of <u>existing</u> contracts that were already in place with <u>existing</u> policyholders.  The Education

Code is crystal clear on this point.  *See* Educ. Code §§ 25113-14.  Nonetheless, Plaintiffs

inexplicably proclaim that America engaged in "illegal" and "oppressive" acts, charging

"unsuspecting public servants" with "undisclosed and hefty fees."  Compl. ¶ 132.  Plaintiffs'

pleading in this case underscores the fundamental problem with their sweeping crusade against

403(b) vendors:  a plaintiff cannot just baldly assert that a business is acting illegally, without

---

[3] Although immaterial on this motion, Americo disputes Plaintiffs' contention that such items are "fees" that must be disclosed on the Website under Sections 25103(a)(3) and 25107.

In any event, as Plaintiffs admit, the direct and indirect fees associated with an indexed annuity product are "contractual terms."  Compl. ¶ 72.  In connection with the issuance of their policies, Plaintiffs (and other policyholders) directly received from Americo all of the fee information that Plaintiffs incorrectly contend Americo was required to provide on the Website.  It is inconceivable that, years later, Plaintiffs would have reasonably relied on the product's <u>absence</u> from the Website to somehow conclude that there must be no associated fees, or that the fees must be less than the contractual terms under their policy and what was reflected in the account statements they received.

**Brown, Neri, Smith & Khan LLP**
A Limited Liability Partnership

16209058.3
227156-10003

4

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS

tethering their allegations to actual facts and law.  Plaintiffs knew about the fees they agreed to, and received extensive disclosures about those fees.  The creation of an online "information bank" years later had no effect – legally or factually – on the terms of Plaintiffs' existing policies or their continuing contributions.  Plaintiffs do not even claim to have ever visited the Website.

At bottom, stripped of the convoluted and largely inapplicable allegations copied and pasted from the other class action complaints filed by Plaintiffs' counsel, the applicable facts and law in this case are straightforward, and the issues to be decided on this motion are easily resolved. The Complaint should be dismissed without leave to amend.

## II.     <u>SUMMARY OF ARGUMENTS</u>

As set forth more fully below, Plaintiff's Complaint is legally defective and should be dismissed without leave to amend for all of the following independently dispositive reasons:

***First***, Plaintiffs failed to allege a viable UCL claim against Americo, because Americo's conduct is expressly permitted under California law.  Plaintiffs' sole basis for asserting a claim under the "unlawful" prong of the UCL is its erroneous contention that Americo violated Education Code Sections 25101(a)(3) and 25107 – which it did not.  Both of the Plaintiffs in this case initially purchased their 403(b) product from Americo before 2004 and, as such, their continuing contributions to that unregistered product were governed by and expressly authorized under Education Code Sections 25113 and 25114.  Accordingly, Plaintiffs failed to allege a viable UCL claim based on any "unlawful" conduct; and Plaintiffs' claim under the "unfairness" prong of the UCL likewise cannot proceed by virtue of California's safe harbor rule.  Because the statutory law precludes Plaintiffs from stating a claim for which the Court may grant relief, the Complaint should be dismissed without leave to amend.

***Second***, to the extent Plaintiffs seek to bring a UCL claim based on Americo products they did <u>not</u> purchase, they lack standing to do so.  Plaintiffs do not and cannot allege facts demonstrating that such products are "substantially similar" to the product they purchased, and that the alleged disclosure violations and suffered injuries are likewise "substantially similar." Nor can they establish that the resolution of the asserted claims would be "identical."  Their

claim should therefore be dismissed with prejudice as to all Americo products other than the one they purchased (which, as discussed above, also cannot serve as the basis for a UCL claim).

**Third**, even if Plaintiffs had adequately alleged a statutory violation of the Education Code (and they did not), their UCL claim also must be dismissed for lack of standing, because they failed to plead the requisite causal nexus between Americo's alleged omission and their purported injury.  Nowhere does the Complaint allege that Plaintiffs ever saw, read or relied on the Website. Both Plaintiffs in this case purchased their product years before the Website existed, and fail to plausibly allege that their continued contributions were made "as a result of" the product's absence from the Website.  Nor can they establish that the fees they incurred were the consequence of any Website omission; the fees they now seek to avoid were contractual terms they agreed to long ago.

**Fourth**, Plaintiffs' UCL claim must also be dismissed because Plaintiffs failed to allege an inadequate remedy at law and lack standing to seek injunctive relief.

For all of these reasons, Americo's motion should be granted, and the Complaint should be dismissed in its entirety without leave to amend.

## III.   STATEMENT OF RELEVANT FACTS

### A.   Americo And Its 403(b) Annuities

Americo is a nationwide insurance and annuity company.  Compl. ¶ 12.  Relevant here, Americo previously offered to eligible public school employees in California certain tax-advantaged employer-sponsored retirement plans referred to as "403(b) plans," under Section 403(b) of the Internal Revenue Code.  Compl. ¶ 3.[4]  One type of "investment" allowed in a 403(b) plan is an annuity.  Compl. ¶ 44.  An annuity is a contract between an individual and insurance company under which the individual makes payments and, in return, receives disbursements from the insurance company for a specified time period.  Compl. ¶ 48.  With an indexed annuity, the individual's money is "not actually invested in the specified market index."  Compl. ¶ 72.  Instead, it is "an insurance product, wherein the investor cannot lose money, and earns interest based on a complicated formula created by the insurance company, with returns *tied* in some manner to a

---

[4] Americo does not currently actively offer 403(b) products in California.

broad-based securities index." *Id.*  As explained by Plaintiffs, the returns are determined by the selection of (1) a "crediting strategy," comprised of the index to which returns are tied, the calculation methodology for the returns, and crediting period; and (2) "direct and indirect fees," which are "contractual terms through which the amount of interest added to the annuity is lower than the actual growth of the underlying index." Compl. ¶¶ 72-91.

**B.    The Americo Product Purchased By Plaintiffs**

As alleged in the Complaint, both of the Plaintiffs in this case purchased a single 403(b) product from Americo, referred to by them as Americo's "403(b) Tax Shelter Annuity" product. Compl. ¶ 103.  Both Plaintiffs initially purchased this Americo product several years before the 403bCompare Website was implemented in 2004.

Plaintiff Phillip Cohen, an employee of a county office of education, "purchased his 403(b) product from [Americo] before the passage of the Code," pursuant to a policy issued on May 21, 1999.  Compl. ¶¶ 19, 20, 100.  Mr. Cohen owned this Americo product from 1999 to 2020, "continu[ing] to invest new money into it for approximately 12 years after the Code's passage" via payroll deduction.  Compl. ¶¶ 20, 100.[5]

Plaintiff Blanchard is similarly alleged to have been an employee of a local school district. Compl. ¶ 17.  According to the Complaint, Ms. Blanchard initially purchased Americo's "403(b) Tax Shelter Annuity product" in 2002 (before the passage of the Code and the implementation of the Website) and, like Mr. Cohen, she has made contributions to that product via payroll deductions through her school district since then.  Compl. ¶ 106; *id.* ¶ 18 (alleging that Ms. Blanchard purchased the Americo product pursuant to policies issued on November 8, 2002 and April 14, 2008).[6]  Ms. Blanchard "continues to invest in [her 403(b) product] to this day."  *Id.*

---

[5] Mr. Cohen is also a named Plaintiff in two other class action lawsuits pending before this Court, which were also filed on June 26, 2023 against other providers of 403(b) products, captioned *Barlett v. North American Company for Life and Health Insurance* (Case No. 5:23-cv-04123-PCP) and *Taylor v. Midland National Life Insurance Co.*, (Case No. 5:23-cv-04125-PCP).

[6] Ms. Blanchard's alleged "repurchase" of the same product in 2008 does not change the analysis requiring dismissal of her claim.  Plaintiffs vaguely assert, without explanation, that Ms. Blanchard "purchased [her] product in 2002 (before the passage of the Code) and again in 2008 (after the passage of the Code).  *See* Compl. ¶ 106.  As the 403bCompare Website makes clear, vendors may continue to sell an unregistered product to an employee after November 30, 2004 where the employee "has an existing contract" for the product or was "enrolled prior to that date."  *See infra* at pp. 13-14.

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE COMPANY'S MOTION TO DISMISS

Plaintiffs do not claim that Americo failed to comply with any contractual obligations under their policies – nor do they challenge any terms or disclosures in the policies they were issued, or claim to have been denied any guaranteed benefit under their policies.  They also do not contend that the fees associated with their Americo product were not sufficiently disclosed in the documentation they received directly from Americo – or that the fees were inconsistent with what was disclosed in the terms and conditions of the contract they received, or the numbers reported on their account statements.  Instead, the Complaint focuses exclusively on the absence of this Americo product from the Website after the Website was implemented years later – while ignoring all of the actual information and disclosures Plaintiffs received directly from Americo.

**C.     The 403bCompare Website**

In 2002, after both Plaintiffs had purchased their Americo product, the California Legislature passed California Education Code Sections 25100-25115, Title 1, Division 1, Part 13, Chapter 39 ("School Employer Retirement Investment Product Vendor Registration Process and Information Bank").  This new 2002 legislation required CalSTRS to establish a vendor registration process whereby information about 403(b) vendors and their products is made available to California public school employees in an online information bank (the "403bCompare Website" or "Website").  The initial registration process for the Website was to be completed by CalSTRS by July 1, 2004.  *See* Educ. Code § 25110.

Under this statutory framework, vendors that offer 403(b) products to employers and their eligible employees are generally required to register those products and provide certain categories of information about the products, to be made available on the 403bCompare Website.  *See* Educ. Code § 25101(a)(1)-(11).  In this case, as in each of the other class action lawsuits filed by Plaintiffs' counsel, Plaintiffs contend that Americo failed to disclose the "fees" or "expenses" associated with its 403(b) products, as required by Section 25101(a)(3).  Section 25101(a)(3) provides that the information to be disclosed by the vendor includes "[a] disclosure of all expenses paid directly or indirectly by retirement plan participants, including, but not limited to, penalties for early withdrawals, declining or fixed withdrawal charges, surrender or deposit charges, management fees, and annual fees."  *See id.* § 25101(a)(3).  As set forth in Section 25107, "[a]

8

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS

vendor may not charge a fee associated with a registered 403(b) product that is not disclosed, pursuant to Section 25101." *Id.* § 25107.

Importantly, in enacting the statutory framework establishing the Website and vendor registration process, the Legislature <u>separately</u> addressed unregistered 403(b) products purchased by an employee before November 2004. Continuing contributions to such unregistered products are addressed in Education Code Sections 25113 and 25114. Those provisions <u>expressly authorize</u> continuing contributions to unregistered products that were purchased before November 30, 2004, without requiring that such products be registered or that information about those products be disclosed. Section 25113 ("Unregistered Products") states that "an employer may not forward annuity or custodial account consideration to the vendor of any unregistered 403(b) product, <u>except insofar as an employee continues making contributions to an unregistered product or products as described in Section 25114</u>." *Id.* § 25113 (emphasis added). In turn, Section 25114 ("Continuation of Contributions to Unregistered Product") provides that "an employee shall select from registered 403(b) products" <u>except</u> that (a) "[a]n employee of a local school district, community college district, or county office of education may continue to make contributions to <u>unregistered products purchased or entered into prior to November 30, 2004</u>,"[7] and (b) "[a] state employee of a state employer under the uniform state payroll . . . may continue to make contributions to unregistered products purchased or entered into prior to January 1, 2009." *Id.* § 25114(a)-(b) (emphasis added).

The Complaint alleges that the Website currently lists five Americo products that were not purchased by Plaintiffs (Compl. ¶ 95) – but that "[t]here is no mention of" the Americo product that Plaintiffs purchased. Compl. ¶ 103. As Plaintiffs proclaim in their Complaint, "Defendant has failed to disclose not only this product's fees, but its existence." *Id.*; *see also id.* at p.20 ("Defendant provided no disclosures whatsoever about the product that Plaintiffs invested in.").

---

[7] This provision initially referred to unregistered products purchased prior to "the date of implementation of the impartial investment bank, as established by this chapter." The Legislature's 2012 amendments substituted "November 30, 2004" for that phrase.

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE COMPANY'S MOTION TO DISMISS

The entirety of Plaintiffs' claim against Americo is predicated on the absence of this product from the Website – but, conspicuously absent from Plaintiffs' Complaint is any allegation that either of them ever knew about, visited, or relied on the Website. Plaintiffs do not allege that they relied on any information that was or was not disclosed on the Website. Nor do they allege that if the Website had included information about this Americo product, they would have known about it, or that such information would have caused them to terminate their contributions.

### D.      The Class Action Lawsuits Filed By Plaintiffs' Counsel

On June 26, 2023, Plaintiffs' counsel filed this putative class action in Monterey County Superior Court, along with at least four other substantially similar class action lawsuits against other 403(b) providers. In each of the five copy-and-paste complaints filed by Plaintiffs' counsel, the plaintiffs allege a single UCL claim asserting that the defendant failed to sufficiently disclose information about the fees associated with their 403(b) products, in purported violation of Education Code Sections 25101(a)(3) and 25107. Americo removed to this Court on August 11, 2023, as did several of the other defendants. Four of these related actions are now pending before this Court. Each of the defendants in these four actions has filed a motion to dismiss.

### IV.      <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, and is properly granted when the complaint fails to allege sufficient facts to support a cognizable legal claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. It "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558. Leave to amend may be denied as futile. *Novak v. U.S.*, 795 F.3d 1012, 1020 (9th Cir. 2015).

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE COMPANY'S MOTION TO DISMISS

## V.   ARGUMENT

### A.   Plaintiffs Fail To Allege A Viable UCL Claim Based On America's Alleged Violation Of The Education Code.

To state a viable claim under California's UCL, Plaintiffs must adequately allege one of "three varieties of unfair competition: practices which are unlawful, unfair, or fraudulent." *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999); Cal. Bus. & Prof. Code § 17200 (prohibiting "unlawful, unfair or fraudulent business act or practice").  Here, Plaintiffs assert their UCL claim under its "unlawful" and "unfair" prongs (and do not allege "fraudulent" conduct).  Compl. ¶¶ 125, 130-134.  But, as discussed below, because the Education Code expressly authorizes continuing contributions to unregistered products initially purchased before 2004, the Complaint fails to state a viable UCL claim based on any "unlawful" conduct – and Plaintiffs' claim under the "unfair" prong of the UCL likewise cannot proceed because it is barred by the safe harbor rule.

### 1.   Plaintiffs Fail To State a UCL Claim Based on an "Unlawful" Practice.

It is black letter law that "[a] defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law." *Kenery v. Wells Fargo, N.A.*, 2014 WL 129262, at *5 (N.D. Cal. Jan. 14, 2014) (citation omitted).  "Under its 'unlawful' prong, the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL.  Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1544 (2007) (citation omitted).  Put differently, "Plaintiff's failure to adequately allege an underlying statutory violation is fatal to Plaintiff's UCL claim premised on those statutory violations." *Monet v. JPMorgan Chase Bank, N.A.*, 2017 WL 3895790, at *7 (N.D. Cal. Sept. 5, 2017).[8]

---

[8] *See also Alvarado v. 360 Mortgage Group, LLC*, 2017 WL 4647752 (N.D. Cal. Oct. 16, 2017) (dismissing claim under unlawful prong of UCL where "there is no freestanding claim for the UCL claim to hook onto"); *Rojas-Lozano v. Google, Inc.*, 159 F.Supp.3d 1101 (N.D. Cal. 2016) ("Plaintiff premises her unlawful prong UCL claim on [defendant's alleged statutory violations].  As Plaintiff fails to state a claim under either statute, she necessarily cannot state a UCL unlawful prong claim."); *Das v. WMC Mortg. Corp.*, 831 F.Supp.2d 1147, 1161 (N.D. Cal. 2011) (plaintiffs failed to state UCL claim for "unlawful" conduct where they failed to sufficiently allege underlying statutory violations).

Plaintiffs' sole purported basis for their claim against Americo under the "unlawful" prong of the UCL is their erroneous contention that it violated Education Code Sections 25101(a)(3) and 25107 by charging Plaintiffs "fees" that were not disclosed on the Website.  *See* Compl. ¶¶ 18, 20, 101-102, 107, 128-130.  Section 25101(a) requires vendors to register offered 403(b) products and provide certain information on the Website, including "[a] disclosure of all expenses paid directly or indirectly by retirement plan participants."  Educ. Code § 25101(a)(3).  Section 25107 provides that "[a] vendor may not charge a fee associated with a registered 403(b) product that is not disclosed pursuant to Section 25101."  *Id.* § 25107.  Based on these two provisions, Plaintiffs incorrectly conclude that "any fee associated with a 403(b) product that is not disclosed on 403bCompare.com is *per se* illegal." Compl. ¶ 60; *id* ¶ 107 ("Having failed to disclose any fees for its 403(b) Tax Shelter Annuity product, Defendant was not authorized to charge them.").

Plaintiffs misstate the law.  Again, Education Code Sections 25103(a) and 25107 <u>do not apply</u> here, because both Plaintiffs in this case initially purchased their 403(b) product from Americo before November 30, 2004.[9]  The Education Code separately addresses such products in Sections 25113 and 25114 – and it expressly **<u>authorizes</u>** continuing contributions to unregistered products purchased before that date.  Education Code Sections 25113 and 25114 state in full:

**Section 25113.  Unregistered products; consideration.**

> An employer may not forward annuity or custodial account consideration to the vendor of any unregistered 403(b) product, <u>except insofar as an employee continues making contributions to an unregistered product or products as described in Section 25114</u>.

**Section 25114.  Continuation of contributions to unregistered product.**

> <u>Except as provided in this section</u>, an employee shall select from registered 403(b) products.
>
> (a)  An employee of a local school district, community college district, or county office of education <u>may continue to make contributions to unregistered products purchased or entered into prior to November 30, 2004</u>.

---

[9] *See, e.g.*, Compl. ¶ 20 (alleging that Cohen purchased his 403(b) product from Americo in 1999); *id.* ¶ 106 (alleging that Blanchard "purchased Defendant's 403(b) Tax Shelter Annuity product in 2002").

> (b) A state employee of a state employer under the uniform state payroll system . . . eligible to participate in an annuity contract and custodial account as described in Section 403(b) of the Internal Revenue Code of 1986, <u>may continue to make contributions to unregistered products purchased or entered into prior to January 1, 2009.</u>

Educ. Code §§ 25113, 25114 (emphasis added).

It cannot seriously be disputed that Sections 25113 and 25114 govern Plaintiffs' continuing contributions to the Americo product they purchased.  As alleged in the Complaint, Plaintiffs are employees of a "local school district" or "county office of education." Compl. ¶¶ 17, 19.  Both initially purchased their Americo product before November 30, 2004.  Compl. ¶¶ 20, 106.  Plaintiffs' continuing contributions were thus expressly governed and authorized by Sections 25113 and 25114.  Moreover, the registration and disclosure requirements of Sections 25101(a) and 25107 are plainly inapplicable, in light of the express language of these provisions.  Indeed, what Section 25107 actually provides is that a vendor may not charge "a fee associated with a <u>registered 403(b) product</u> that is not disclosed pursuant to Section 25101."  Educ. Code § 25107.  By Plaintiffs' own allegations, their Americo product was <u>not</u> registered.  Compl. ¶¶ 103, 106.

Although unnecessary given the plain language of the statutes, the legislative history confirms that, when enacting the legislation implementing the vendor registration process, the California Legislature deliberately authorized continuing contributions to previously purchased products without requiring Website registration.  *See* Wu Decl., Ex. A (CA Bill Analysis, A.B 2506 Assem., 8/19/2002) ("The Senate amendments . . . require employees to select from registered products but allow those currently contributing to non-registered products to continue those contributions"); *see also id.*, Ex. B (CA Bill Analysis, A.B. 2506 Senate, 8/19/2002) (explaining that the bill "allows school employees to continue to make contributions to unregistered products purchased or entered into prior to [the implementation of the website]").

The "Vendor Frequently Asked Questions" on the Website likewise confirm that vendors may continue to sell unregistered 403(b) products to employees with existing contracts for the product or who were enrolled before November 30, 2004.[10]  *See* Wu Decl., Ex. C ("Q:  Does my

---

[10] *See* https://www.403bCompare.com/VendorFAQs.

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE COMPANY'S MOTION TO DISMISS

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

organization have to register every fund we sell in California?  A:  Yes. According to the Education Code, if the fund does not appear in the Information Bank [*i.e.,* on the Website], it cannot be sold to employees . . . in California effective November 30, 2004 <u>unless the employee has an existing contract</u>.") (emphasis added); *see also id.* ("Q:  What will happen if my organization does not register?  A:  By not participating, your organization will be prohibited from enrolling any employees . . . in your 403(b) plan as of November 30, 2004, <u>who were not enrolled prior to that date</u>.") (emphasis added).

**2.      Plaintiffs Fail to State a UCL Claim Based on an "Unfair" Practice.**

Because the challenged conduct at issue here was specifically considered – and expressly authorized – by the Legislature, Plaintiffs' UCL claim also cannot proceed under the UCL prong prohibiting "unfair" practices, by virtue of the safe harbor rule in California.

"In California, unfair competition claims are subject to the safe harbor doctrine, which precludes plaintiffs from bringing claims based on actions the Legislature permits." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 964 (9th Cir. 2016) (quotations and citation omitted).  In other words, "[a]cts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law."  *Cel-Tech Comms. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180-184 (Cal. 1999); *see also Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999) ("A business practice cannot be unfair if it is permitted by law.  The UCL does not apply if the Legislature has expressly declared the challenged business practice to be lawful in other statutes.") (citations omitted); *Cheaper! v. State Bd. of Equalization*, 2011 WL 2560248, at *3 (E.D. Cal. June 28, 2011) ("The California Supreme Court has instructed that a defendant's compliance with an express provision of law requiring or allowing certain activity precludes a claim for violation of Section 17200 based on the same activity.") (citations omitted).

Put differently, "courts may not use the unfair competition law to condemn actions the Legislature permits."  *Cel-Tech*, 20 Cal.4th at 184.  The California Supreme Court has emphasized:

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE COMPANY'S MOTION TO DISMISS

1
2
3
4
5

> Although the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a "safe harbor," plaintiffs may not use the general unfair competition law to assault that harbor.

6
7
8
9
10

*Id.* at 182. "[S]afe harbors exist both if the Legislature has 'permitted certain conduct' and if it has 'considered a situation and concluded that no action should lie.'" *Alaei v. Rockstar*, 224 F.Supp.3d 992, 1001 (S.D. Cal. 2016) (dismissing claim which sought to "use the UCL to attack conduct which the legislature has thoughtfully considered and deemed lawful").[11]

11
12
13
14
15
16
17
18
19
20
21
22
23
24

Here, the California Legislature has done precisely that: it expressly addressed the conduct alleged by Plaintiffs to be "unfair," and unambiguously decreed it to be lawful. *See* Educ. Code §§ 25113 & 25114. The law does not permit Plaintiffs to make an end-run around the statutory law enacted by the Legislature by attempting to recast the same conduct as "unfair" under the UCL. Nor may Plaintiffs expand the requirements codified by the Legislature by purporting to require disclosures under a circumstance explicitly exempted by the statutory scheme. *See Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011) ("The allegedly unfair business practice in this case is the residual fuel resulting from a DMS-certified dispenser design. California law unequivocally permits Defendants' conduct, therefore affording safe harbor from UCL liability."); *Suzuki v. Hitachi Global Storage Tech.*, 2007 WL 2070263, at *3 (N.D. Cal. July 17, 2007) (dismissing UCL claim without leave to amend based on holding that "plaintiff's UCL claim fails under California's safe harbor doctrine because using decimal notation to represent HDD capacity is clearly permitted by the legislature"); *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717-21 (2001) (affirming dismissal of UCL claim against insurers where the Insurance Code

25
26
27
28

---

[11] As courts have explained, in analyzing a UCL claim under the "unfair" prong, courts "engage in a two-step process. First, we determine whether the Legislature has provided a 'safe-harbor' for the defendant's alleged conduct. If not, we determine whether that conduct is unfair." *McCann v. Lucky Money*, 129 Cal. App. 4th 1382, 1387 (2005). But "where the allegedly unfair business practice has been authorized by the Legislature, no factual or equitable inquiry need be made, as the court can decide the matter entirely on the law." *Id.* (citation omitted).

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE COMPANY'S MOTION TO DISMISS

permitted the alleged "unfair" practices); *Loeffler v. Target Corp.*, 58 Cal.4th 1081, 1126 (Cal. 2014) ("The UCL cannot properly be interpreted to impose on retailers a duty with respect to sales tax that is contradicted by the statutory scheme governing the sales tax.").  Nonetheless, that is what Plaintiffs seek to do here – seeking, among other things, injunctive relief requiring Americo to comply with registration and disclosure requirements for previously purchased products specifically exempted by the Education Code.  *See* Compl. ¶ 16.

In sum, the vendor registration statutes cannot be reconciled with – and indeed, foreclose – Plaintiffs' UCL claim.  Because Plaintiffs fail to state a viable claim under the UCL for "unlawful" or "unfair" conduct (and do not allege "fraudulent" conduct), their claim must be dismissed.  Furthermore, because the Education Code expressly authorizes Americo's challenged conduct, Plaintiffs will not be able to salvage their claim by amendment.  Leave to amend should be denied. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 935 (9th Cir. 2011) (affirming dismissal of UCL claim without leave to amend because amendment "would not alter the fundamental flaw in the theory of Plaintiffs' lawsuit . . . [which] is that Defendants' current conduct – using dispenser designs that cause the residual fuel problem – is lawful in California" and thus "does not support a claim for which we may grant relief"); *Mai v. Supercell Oy*, --- F.Supp.3d ---, 2023 WL 25713, at *6-7 (N.D. Cal. Jan. 3, 2023) (dismissing UCL claim and denying leave to amend as futile where conduct was not "unlawful" or "unfair" in light of California statutes defining unlawful gambling).

### B.  Plaintiffs Lack Standing to Bring a UCL Claim Based On Products They Never Purchased.

To the extent Plaintiffs purport to assert their claim based on other Americo products they did <u>not</u> purchase, Plaintiffs lack standing to bring such a claim.  As discussed, Plaintiffs allege that they purchased a single Americo product referred to in the Complaint as Americo's "403(b) Tax Shelter Annuity" product.  Compl. ¶¶ 103, 106-07.  Nonetheless, Plaintiffs purport to bring a UCL claim based on "all indexed annuity 403(b) products issued by [Americo]" that were "invested in" during a four-year period by any of "hundreds or thousands of class members."  Compl. ¶¶ 112, 114.  Plaintiffs lack standing to bring a claim based on Americo products they did not purchase.

16

Brown, Neri, Smith &
Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS

As courts in this district have explained, "[T]he prevailing rule is that a plaintiff has standing to assert claims for unnamed class members based on products the plaintiff did not purchase so long as the products and alleged misrepresentations are substantially similar." *Meza v. Coty, Inc.*, 2023 WL 3082346, at *4 (N.D. Cal. Apr. 24, 2023) (citations omitted); *see also Miller v. Ghirardelli Chocolate Co.*, 912 F.Supp.2d 861, 868-72 (N.D. Cal. 2012) (dismissing claims based on unpurchased products for lack of standing because "the five products and the alleged misrepresentations about them" were not "sufficiently similar").   The key inquiry "focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products." *Sanchez v. Nurture, Inc.*, 626 F.Supp.3d 1107, 1116 (N.D. Cal. 2022) (citation omitted) (plaintiff lacked standing to pursue claims as to unpurchased products that were "not sufficiently similar to the purchased products").   "That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Id.*; *see also Murphy v. Olly Public Benefit Corp.*, --- F.Supp.3d ---, 2023 WL 210838, at *13 (N.D. Cal. Jan. 17, 2023) ("Products are 'substantially similar' if 'the resolution of the asserted claims will be identical between the purchased and unpurchased products.'") (citation omitted).[12]   "[W]here the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased." *Sanchez*, 626 F.Supp.3d at 1116 (citation omitted).[13]

Plaintiffs failed to allege "substantial similarity" – indeed, the Complaint does not even claim that "substantial similarity" exists in this case.  Nor does it contain the requisite factual allegations to sufficiently plead it.  Among other things, the Complaint fails to allege any facts establishing that other Americo products are substantially similar to the product they purchased;

---

[12] *See also Gamez v. Summit Naturals, Inc.*, 2022 WL 17886027, at *6 (C.D. Cal. Oct. 24, 2022) ("Under the substantial similarity test, courts consider whether the products at issue and alleged misrepresentations are substantially similar.  The relevant factors in this inquiry include similarity in products, claims, and injury to customers.") (citation omitted)

[13] Other district courts in the Ninth Circuit have held that whether or not the products, claims and injuries are "substantially similar," class action plaintiffs lack standing to assert claims as to products they did not purchase absent personal injury to the plaintiff.  *See Lorentzen v. Kroger Co.*, 532 F.Supp.3d 901, 909 (C.D. Cal. 2021) ("Plaintiff bought only one of the eight Products named in the SAC.  She therefore did not suffer any injury – economic or otherwise – related to the other seven Products.  Because there is no injury, Plaintiff lacks standing to assert these unrelated claims.").

that the alleged Education Code violations are substantially similar; and that "the resolution of the asserted claims will be identical." *Id.* In fact, the Complaint establishes the opposite.

As Plaintiffs' own allegations in the Complaint make clear, the associated fees and alleged omissions are plainly <u>not</u> the same across all of America's products. Compl. ¶¶ 72-101. As Plaintiffs explain in their Complaint, America's indexed annuity products differ in many significant respects, including the "complicated formulas" determining the returns from the annuity, and the "direct and indirect fees" associated with the product. Compl. ¶¶ 72-91. The alleged disclosure violations also differ substantially across America's product lines. For example, Plaintiffs allege that the product they purchased was not even registered on the Website (Compl. ¶ 103); while alleging that five America products <u>are</u> currently registered, as to which Plaintiffs allege varying degrees of inaccuracy vis-à-vis the "fee" disclosures (Compl. ¶¶ 95-97). Plaintiffs further allege that one America product on the Website is "discontinued," meaning that it continues to be owned but "is no longer offered to new investors" (Compl. ¶¶ 71, 95); and still other America products may have been listed but subsequently removed (Compl. ¶ 106).

Further underscoring the dissimilarity of claims and alleged omissions across products, the statutory registration and disclosure requirements are entirely different as between products purchased before November 2004 and later-purchased products. *Compare* Educ. Code §§ 25101(a) & 25107 (requiring registration and disclosures) *with* Educ. Code §§ 25113 & 25114 (exempting contributions to products purchased before November 2004). Indeed, as discussed above, Plaintiffs' continuing contributions to products purchased before November 2004 are governed by separate statutory provisions, under which the product registration requirements (and associated disclosure requirements) do not apply. Accordingly, the "resolution of the asserted claims" would not be "identical." *Sanchez,* 626 F.Supp.3d at 1115-17.

Because the Complaint does not – and cannot – establish the substantial similarity of the America products that Plaintiffs did not purchase, and the alleged omissions are different, Plaintiffs' claim must be dismissed as to all products other than the one they purchased. *See Murphy*, 2023 WL 210838, at *13 (dismissing claims as to unpurchased products because "Plaintiffs have not adequately alleged that melatonin products are 'substantially similar' such that

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE COMPANY'S MOTION TO DISMISS

'the resolution of the asserted claims will be identical between the purchased and unpurchased products"); *Zimmerman v. L'Oreal USA, Inc.*, 2023 WL 4564552, at *3 (N.D. Cal. July 17, 2023) (dismissing claims as to unpurchased products for lack of standing because "the allegedly misleading statements are different"); *Stephenson v. Neutrogena*, 2012 WL 8527784, at *1 (N.D. Cal. July 27, 2012) ("dismiss[ing] with prejudice plaintiff's claims to the extent that they relate to products that were not actually purchased by plaintiff" because the purchased products were not "similar enough to the unpurchased products such that an individualized factual inquiry was not needed for each product"); *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2017 WL 385042, at *13 (C.D. Cal. Jan. 24, 2017).

At a minimum, the factual allegations in the Complaint are insufficient for this Court to make the requisite determination of substantial similarity, and must be dismissed for that reason. *See Smedt v. Hain Celestial Group, Inc.*, 2014 WL 2466881, at *7 (N.D. Cal. May 30, 2014) (dismissing claims as to unpurchased products where there was "nothing in the [complaint] . . . showing how the unpurchased products are substantially similar to the purchased products" and the "[p]laintiff's assertion that the products are 'essentially the same' is too ambiguous"); *Meza*, 2023 WL 3082346, at *4 (dismissing claim as to unpurchased product because "Plaintiff does not provide any illustrations or descriptions" and "[w]ithout this information, the Court cannot determine if there is substantial similarity"); *Zimmerman*, 2023 WL 4564552, at *3 (dismissing claim as to unidentified unpurchased products because "[t]he Court cannot assess substantial similarity absent images or detailed descriptions of the products' label"); *Gamez*, 2022 WL 17886027, at *6 (dismissing claims based on unpurchased products where plaintiff failed to "[plead] sufficient facts regarding the products she purchased versus the products she did not purchase, if any, to demonstrate substantial similarity"); *McKinney v. Corsair Gaming, Inc.*, 2022 WL 2820097, at *14 (N.D. Cal. July 19, 2022) (rejecting "conclusory" allegations of substantial similarity and dismissing claims as to unpurchased products for failure to allege similarity "with enough specificity").

C.      **Plaintiffs Lack Standing To Bring Their UCL Claim Because They Failed To Plead Injury "As A Result Of" America's Alleged Conduct.**

Plaintiffs' UCL claim also must be dismissed for another independently dispositive reason: the Complaint failed to plead injury <u>as a result of</u> the Americo product's absence from the Website.  The law is clear that, to have standing to bring a claim under the UCL, a plaintiff must have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition."  Bus. & Prof. Code § 17204.  A UCL plaintiff must meet this standing requirement to pursue representative claims on behalf of others.  *Id.* § 17203.

Courts have explained that the phrase "as a result of" means "caused by" – imposing a causation requirement, and requiring that "actual reliance" be adequately alleged: "Plaintiffs alleging claims under the UCL are required to plead and prove actual reliance on the misrepresentations or omissions at issue. This is true of all of Plaintiffs' UCL claims, regardless of whether they are brought under the unfair, unlawful, or fraudulent prong."  *Williams v. Apple, Inc.*, 449 F.Supp.3d 892, 912 (N.D. Cal. 2020) (citations omitted); *Roffman v. Perfect Bar, LLC*, 2022 WL 4021714, at *6 (N.D. Cal. Sept. 2, 2022) ("The Court concludes that the reliance requirement also applies to a claim under the UCL's unlawful prong where the underlying conduct is not a misrepresentation or fraud."); *Nacarino v. Chobani, LLC*, 2022 WL 344966, at *6 (N.D. Cal. Feb. 4, 2022) ("To satisfy the causation requirement [of Section 17204], plaintiffs are required to plead and prove that they actually relied on the statement at issue.") (citation omitted); *Peviani v. Natural Balance, Inc.*, 774 F.Supp.2d 1066, 1070 (S.D. Cal. 2011) ("[A]ctual reliance is required to have standing to sue under the UCL.") (citations omitted); *Swearingen v. Late July Snacks LLC*, 2017 WL 4641896, at *2-3 (N.D. Cal. Oct. 16, 2017) (holding that "[s]tanding under the UCL requires proof of reliance even if reliance is not an express substantive element of the underlying statute when the claim essentially sounds in misrepresentation" and a plaintiff "cannot seek UCL relief based on a strict liability theory").

Plaintiffs failed to plead the requisite causation between America's alleged omission and their purported injury.  Nowhere does the Complaint allege that Plaintiffs were aware of, saw, or relied on any information that was (or was not) disclosed on the 403bCompare Website, in

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

deciding to purchase their 403(b) product or continuing to make contributions thereafter.  In fact, there are no allegations at all about what Plaintiffs saw or read, or when, or what they relied on.  Plaintiffs do not allege that, if the omitted information been disclosed, they would have been aware of it, much less that they would have chosen not to purchase the product, or to stop making contributions. Nor do Plaintiffs allege any other facts to establish their reliance on the absence of their product from the Website, or any other causal nexus with their purported injury.

Plaintiffs' <u>only</u> effort to allege the required causation is their bare, conclusory allegation that "[a]s a result of Defendant's unlawful and unfair practices, Plaintiffs and class members have suffered injury in fact." Compl. ¶ 135.  That is not sufficient.  *See Cattie v. Wal-Mart Stores*, 504 F.Supp.2d 939, 947-48 (S.D. Cal. 2007) (allegations that the plaintiff and class members "have been injured in their money or property as a result of" the defendant's advertising, which "resulted in the sale of goods" "are conclusory and do not adequately allege reliance" for standing under the UCL); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (dismissing claim without leave to amend where "the SAC does not allege Durell ever visited Sharp's website or even that he ever read the Agreement" and "merely alleges that as a 'proximate result of Sharp's unlawful business practices,' Durell and the proposed class 'have suffered economic damages in that they are obligated to pay an unreasonable, unfair and unconscionable debt'").  Of course, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011);  *Ashcroft v. Iqbal*, 556 U.S. 662, 676-79 (2009) ("threadbare recitals of a cause of action's elements, supported by mere conclusory statements," are not sufficient).

Courts have consistently explained that, at a bare minimum, the plaintiff must allege that she saw the website or document in which the defendant is claimed to have made a misrepresentation or omission.  *See Lopez v. Zarbee's, Inc.*, 2023 WL 210878, at *7 (N.D. Cal. Jan. 17, 2023) ("Claims based on websites that plaintiffs fail to allege having actually 'viewed and relied on' are subject to dismissal.") (citation omitted); *Roffman,* 2022 WL 4021714, at *6 ("[W]ithout an allegation that Plaintiffs ever looked at the nutrition facts panel . . . there is no causal link between the allegedly unlawful front-label protein claim and Plaintiffs' alleged

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE COMPANY'S MOTION TO DISMISS

harm."); *Laster v. T-Mobile USA, Inc.*, 407 F.Supp.2d 1181, 1194 (S.D. Cal. 2005) ("[N]one of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they entered into the transaction *as a result of* those advertisements.  The language of the UCL . . . makes clear that a showing of causation is *required* as to each representative plaintiff.") (emphasis in original).

Here, the Complaint is devoid of any allegation that Plaintiffs relied on any information on the Website – or that they even visited it.  Instead, unable to truthfully allege such facts, Plaintiffs resort to offering statistical data about how many people have viewed the Website, asserting that "[a]ccording to public records requests, as of May 31, 2023, the Website has had 2,321,395 visitors over the past four years, averaging 1,429 per day."  Compl. ¶ 110.  What is markedly missing are the required allegations that <u>Plaintiffs</u> knew about, visited, and relied on the Website.

The absence of such allegations is particularly problematic in light of the unique circumstances of this case.  Because Plaintiffs first purchased their Americo product years before the Website was even created (Compl. ¶¶ 20, 106), their decisions to <u>purchase</u> the product could not have been the result of any Website omission.  While Plaintiffs complain that they continued making contributions to this product after the Website came into existence, the Complaint fails to allege that either Plaintiff ever learned about, visited and relied on it.  Moreover, what Plaintiffs take issue with in this case is Americo's <u>failure to register</u> their purchased product on the Website.  *See* Compl. ¶ 103 (alleging that Americo "failed to disclose not only this product's fees, but its existence" on the Website).  There are no factual allegations demonstrating that the product's <u>absence</u> from the Website caused Plaintiffs to continue their contributions. Indeed, such a theory strains credulity:  it is inconceivable that, years after they purchased the product, they learned of the existence of the 403bCompare Website, visited the Website, and then decided to continue making contributions to the Americo product they had long ago purchased because Americo "failed to disclose not only this product's fees, but its existence" on the Website.  Compl. ¶ 103. Plaintiffs have not plausibly alleged that, in reliance on the fact that their Americo product was not even listed on the Website, Plaintiffs somehow concluded that it had no associated fees (or that its fees were lower than what was stated in their contracts and account statements).

Brown, Neri, Smith &
Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS

1    In short, Plaintiffs failed to sufficiently plead the requisite causal nexus for standing to

2  bring their UCL claim.  There are no facts alleged to establish that, but for its absence on the

3  Website, Plaintiffs would have stopped making contributions to the Americo product they

4  previously purchased.  And indeed, according to the Complaint, Plaintiff Blanchard "continues to

5  invest in [the same 403(b) product] to this day" (Compl. ¶ 100) – despite having detailed

6  information concerning the "actual" caps, participation rates and spreads that she now contends

7  she was improperly "charged" by Americo (*see, e.g.*, Compl. ¶¶ 79-91).

8    Nor did Plaintiffs allege that the fees they were charged would not have been incurred if

9  Americo had disclosed them on the Website.  In fact, Plaintiffs admit that the "direct and indirect

10  fees" associated with Americo's annuity products are "contractual terms."  Compl. ¶ 72.  As courts

11  have explained, "[T]here must be a causal connection between the harm suffered and the unlawful

12  business activity.  That causal connection is broken when a complaining party would suffer the

13  same harm whether or not a defendant complied with the law."  *Troyk v. Farmers Grp., Inc.*, 171

14  Cal. App. 4th 1305, 1349 (2009); *Davis v. RiverSource Life Ins. Co.*, 240 F.Supp.3d 1011, 1018

15  (N.D. Cal. 2017) (dismissing UCL claim where plaintiff "[did] not allege that [d]efendants'

16  statutory noncompliance caused him to purchase annuities that he would not have purchased, or to

17  pay more than he would have paid, had [they] complied with the Insurance Code," and also did

18  "not allege that the [surrender] charge would not have been imposed, or would have been less, had

19  [d]efendants complied with the Insurance Code when he purchased the annuities").  Plaintiffs'

20  claim must be dismissed because they were not injured "as a result of" the challenged conduct.

21    **D.    Plaintiffs Fail To Allege That They Lack An Adequate Remedy At Law.**

22    Plaintiffs' Complaint also must be dismissed because they failed to plead that they lack an

23  adequate remedy at law, as required to state a claim under the UCL.  *Sonner v. Premier Nutrition*

24  *Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (plaintiff "must establish that she lacks an adequate

25  remedy at law before securing equitable restitution for past harm under the UCL"); *Gardner v.*

26  *Safeco Ins. Co. of Am.*, 2014 WL 2568895, at *8 (N.D. Cal. June 6, 2014) (dismissing UCL claim

27  because plaintiff "contends he has no adequate remedy at law, but fails to explain how his alleged

28  injury cannot be remedied by the payment of damages").

Brown, Neri, Smith &
Khan LLP
A Limited Liability Partnership

23

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS

Plaintiffs not only failed to allege (as they must) that they lack an adequate legal remedy, but actually allege the opposite.  Plaintiffs' <u>only</u> alleged harm in the Complaint is quantified by the monetary fees that they contend they were charged in violation of the Education Code. Furthermore, Plaintiffs assert that the Education Code has "an enforcement mechanism: the ban on undisclosed fees," under which "[a]ll investors are entitled to recover hidden fees that vendors impose."  Compl. ¶ 111.  According to Plaintiffs, the "[Education] Code thereby protects all purchasers, whether a vendor complies with the transparency requirement and as a result is pressured to lower its fees, or the vendor violates the transparency requirement and must disgorge the unlawful fees it charges."  *Id.*  Because Plaintiffs failed to plead and establish the absence of an available remedy at law, equitable relief under the UCL is not available.

Finally, Plaintiffs also lack standing to pursue injunctive relief because they have not alleged a sufficient "threat of injury [that is] 'actual and imminent, not conjectural or hypothetical.'"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  Standing for injunctive relief requires a plaintiff to "demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way,' such that the plaintiff's injuries could be redressed by the injunction."  *Ketayi v. Health Enrollment Group*, 516 F.Supp.3d 1092 (S.D. Cal. 2021) (citations omitted). Plaintiffs have not alleged that they face a threat of future harm from Americo's alleged omission. Indeed, Plaintiff Cohen no longer owns the product, and does not allege that he will purchase it again (nor could he, since the product is no longer actively offered).  *See Friedman v. AARP, Inc.*, 283 F.Supp.3d 873 (C.D. Cal. 2018) (dismissing with prejudice plaintiff's request for injunctive relief where "there is no likelihood of future harm from Defendants' challenged practices in this case" "[b]ecause Friedman no longer holds a . . . policy with Defendants").  Plaintiff Blanchard has likewise failed to allege facts establishing a "real and immediate threat of repeated injury" to her in the future.  *Chapman v. Pier 1 Imps.*, 631 F.3d 939, 946 (9th Cir. 2011).  In lieu of alleging any such facts, she incoherently asserts that "[b]ecause [s]he still has a 403(b) product with Defendant, and because of the ubiquity of Defendant's unlawful and unfair business practices, there is a real and immediate threat that Plaintiff will suffer the same injury – being charged unauthorized fees –

Brown, Neri, Smith & Khan LLP
A Limited Liability Partnership

16209058.3
227156-10003

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE COMPANY'S MOTION TO DISMISS

1   in the future."  Compl. ¶ 136.  This makes no sense, and is insufficient to survive dismissal.

2   Blanchard cannot plausibly claim imminent injury from the continued absence of her Americo

3   product from the Website, whether with respect to future contributions or fees.  Whatever her prior

4   state of knowledge, she is presently aware that a product's absence from the Website does not

5   somehow mean that the contractual fees under her policy no longer apply.  She also knows that her

6   returns are reduced by fluctuating caps, participation rates and spreads.  *See* Compl. ¶¶ 79-91, 104.

7           Having failed to sufficiently plead entitlement to restitution or standing for injunctive

8   relief, as required to state a claim under the UCL, Plaintiffs' UCL claim should be dismissed.

9   **VI.    CONCLUSION**

10          Plaintiffs' Complaint should be dismissed in its entirety and leave to amend should be

11  denied.  *See Alvarez v. Chevron Corp.*, 656 F.3d 925, 935 (9th Cir. 2011) ("A district court may

12  deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the

13  challenged pleading could not possibly cure the deficiency.").  Because Americo's challenged

14  conduct here is unambiguously and expressly authorized by the Education Code, it cannot support

15  a claim for which this Court may grant relief.  No amendment can cure this fatal defect.

16

17  Dated: September 29, 2023                BROWN NERI SMITH & KHAN LLP
                                                 Ethan J. Brown (SBN 218814)
18                                               Anita P. Wu (SBN 248876)

19
                                            By: /s/ Anita P. Wu
20                                               Anita P. Wu

21                                          11601 Wilshire Boulevard, Suite 2080
                                            Los Angeles, California 90025
22                                          Telephone: (310) 593-9890
                                            Facsimile: (310) 593-9980
23                                          ethan@bnsklaw.com; anita.wu@bnsklaw.com

24                                          *Attorneys for Defendant*
                                            AMERICO FINANCIAL LIFE AND ANNUITY
25                                          INSURANCE COMPANY

26

27

28

**Brown, Neri, Smith & Khan LLP**
A Limited Liability Partnership

16209058.3
227156-10003

25

DEFENDANT AMERICO FINANCIAL LIFE & ANNUITY INSURANCE
COMPANY'S MOTION TO DISMISS